UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
LAVIEN SALES,

                             :

           Plaintiff,             REPORT & RECOMMENDATION

                             :

          -against-           14 cv. 8091 (PAC)(MHD)

                             :

TWU LOCAL 100 VICE PRESIDENT
BRIAN CLARK, LOCAL 100 DIVISION   :
CHAIRMAN RICHARD DAVIS, KEN
PAIGE, ED PICHARDO and DWAYNE    :
RUFFIN,

                             :

           Defendants.
-----------------------------------x

9/16/15

TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

    Pro se plaintiff Lavien Sales commenced this action against a
host of officials of Local 100 of the Transport Workers Union ("the
Local" or "the Union"). In his form complaint, he asserts claims
under, inter alia, Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e; the Age Discrimination in Employment Act, 29 U.S.C.
§ 621 et seq.; the New York State Human Rights Law, N.Y. Exec. Law
§ 296, and the New York City Human Rights Law, N.Y.C. Admin. Code
§§ 8-107(1)(a) & (c). In substance, however, he is not complaining
of employmnet discrimination per se. Rather, as reflected in his
"attachment" to his complaint, he is suing these defendants
because, in his view, the Union did not properly represent him in
a dispute with his employer, the Metropolitan Transportation

1

Authority ("MTA"), which had pressed disciplinary charges against him that led to his suspension, an arbitral proceeding, and his eventual termination by the MTA.

In substance, plaintiff alleges that following the filing of an initial set of charges against him on or about December 13, 2012 for events transpiring on December 11, 2012, the Local did not advise him of the charges; that one of the Union's representatives actively colluded with the MTA to rewrite a "report" that apparently formed the basis for the charges; that he was suspended for 30 days; and that the Union did not initially step in to represent him, compelling him to represent himself in the grievance process. He further asserts that although the Local sought arbitral review of the disciplinary decisions and brought in the law firm Colleran, O'Hara & Mills, LLP -- defendants' current counsel -- for the arbitral hearing, the law firm's assigned lawyer did not appear until the day when the arbitration started, he was young and incompetent, and in fact he presented no evidence at the arbitration even though Sales had unspecified exculpatory evidence. Sales further complains that although the basis for his termination was his allegedly threatening the Union's Depot Chair -- defendant Dwayne Ruffin -- the Local did not produce Mr. Ruffin at the hearing to testify in Mr. Sales's defense. He also alleges that the

2

arbitrator engaged in <u>ex</u> <u>parte</u> communications with the MTA's attorney. (<u>See</u> Compl. Attach. at 1-3).

Plaintiff's allegations of discrimination are conclusory in nature. He asserts that "[t]he MTA's workforce is predominantly made up of black and Spanish people" and that "[f]or years the Local has allow[ed] the MTA to break rules, policies and procedures [-- conduct] that goes unchallenged [and] that systematically [leads to disciplinary actions that] get[] placed against the employee and [result in a] record for wrongful suspensions and terminations." (<u>Id.</u> attach. at 2). He goes on to speculate that "[t]he mere fact that for years Local 100 has not challenge[d] the employer at the local level [for] their violation of employees['] rights in employment leads me to believe there is a[] conspiracy to wrongfully terminate black and Spanish employees at will." (<u>Id.</u> attach. at 2-3).

### Prior Proceedings

Plaintiff filed his complaint with the <u>Pro</u> <u>Se</u> Clerk of the Court on October 7, 2014. On March 2, 2015, defendants moved to dismiss the complaint for failure to state a claim. Plaintiff filed an opposing letter brief on March 25, 2015 ("March 25 letter"). In

that submission he also asked that two attorneys from defendants'
law firm, as well as the MTA and its Labor Relations Director, be
added as defendants in this case. (<u>Id.</u> at 1, 9, 16).[1]


### Defendants' Motion


Defendants assert that plaintiff's federal and state claims of
discrimination should be deemed preempted by the federal and state
laws that recognize a right in a union member to complain of the
denial of fair representation by his union. (Defs' Mem. 6-9). As
for the posited fair-representation claims, defendants urge that
they be dismissed as untimely. (<u>Id.</u> 12-13). Alternatively,
defendants argue that all the claims must be dismissed as lacking
any legal or factual basis. (<u>Id.</u> 13-15). Finally, they assert that
the claims against the five individual defendants should be
dismissed because they were acting in their capacity as union
officials. (<u>Id.</u> 15-16).


In plaintiff's response, he recounts his version of the events
that led to his disciplinary charges and of the conduct of the

---

[1] Plaintiff also refers to a Tom Latimer as a potential new
defendant because he supposedly had an <u>ex parte</u> conversation with
the arbitrator. (<u>Id.</u> 16).

4

defendants in connection with the arbitration. (March 25 letter at 1-17). He complains that the Union's lawyer acted improperly in representing the Union rather than him, that the attorney was ethically bound not to do so, and that he suffered from a conflict of interest. He reiterates complaints from his pleading that the lawyer should have been more aggressive and better prepared at the hearing and also complains that the lawyer wanted him to testify even though he felt uncomfortable doing so. In addition, he states that before he was injured in May 2012, he had been treated well by the MTA, with several of their representatives urging him to seek a promotion. (Id. at 14). He also states that his relationship with Dwayne Ruffin was strained because he was a potential rival for a union officer slot. (Id.)

Related Pre-Suit Events

We briefly summarize the proceedings related to plaintiff's current allegations. In doing so, we consult documents that are integral to the claims asserted in the complaint.

Plaintiff was brought up on charges by the MTA, and suspended, for incidents allegedly occurring on December 11 and 13, 2012. (Farkas Aff. ¶ 5). The first set of charges concerned both

5

plaintiff's refusal on December 11, 2012 to relieve another bus driver because he had not finished his lunch and his related behavior at the time. (Id. Ex. D). The second set of charges concerned his conduct two days later, when he allegedly threatened Mr. Ruffin and engaged in what was perceived as menacing behavior towards Sheila Gatling, the General Superintendent at the depot, and his Surface Line Dispatcher Christopher Sohn. (Id. Ex. E). The employer sought his termination on both sets of charges and placed him on suspension on January 4, 2013, having charged him inter alia with refusing to report at the required time, behaving in a threatening manner to his General Superintendent, making a threatening gesture to Ruffin (the Union Depot Chairman) and repeatedly trying to enter a security booth after being ordered not to do so. (Id. ¶¶ 6-8). He went through the grievance procedures, which led to the sustaining of the charges, and the Local then pursued arbitration on his behalf, which triggered an arbitral hearing on April 1 and 12, 2013. (Id. ¶ 9).

Sales was, in effect, represented by counsel for the Local at the hearing, and that attorney proffered a lengthy Position Statement on May 10, 2013, arguing that termination was an excessive sanction for each of the charges and seeking plaintiff's reinstatement with back pay. (Id. ¶ 13 & Ex. C). The arbitrator

6

issued two awards on July 8, 2013. In one he found that termination was not appropriate for the charges relating to plaintiff's behavior on December 11. In the other, he concluded that termination was proper for plaintiff's alleged threatening behavior towards Ruffin, Gatling and Sohn on December 13, 2012. (Id. ¶¶ 13-14 & Exs. D & E).

On December 12, 2013 plaintiff filed a charge of unlawful discrimination with the New York State Division of Human Rights ("SDHR"), naming the Local as respondent. (Id. Ex. F). Specifically, he contended that the Local had retaliated against him for his previously complaining of discrimination by members of the Local. (Id.). The SDHR dismissed the complaint, stating that Sales had provided no evidence that he had ever protested discrimination and thereby engaged in protected activity. Thus it found no evidence that the Local's adverse actions -- presumably the disciplinary steps -- were pretextual. (Id. ¶ 17 & Ex. F). The Equal Employmnet Opportunity Commission adopted the findings of the SDHR on June 10, 2014. (Id. ¶ 18 & Ex. G).

As a separate matter, in September 2014 Sales filed a lawsuit against the Colleran law firm and two of its lawyers, complaining about its performance in representing him through the arbitration.

7

<u>Sales v. Colleran, O'Hara & Mills, LLP</u>, 14 cv. 7677 (LAP). On November 17, 2014, the Court dismissed that lawsuit <u>sua sponte</u> and without leave to amend, noting that Sales had failed to state a viable claim and that he had asserted related claims in the current lawsuit. (Farkas Aff. Ex. H).

ANALYSIS

I. <u>Rule 12(b)(6) Standards</u>

We first address the standards applicable to the required 12(b)(6) analysis. When the court assesses such a motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>accord</u>, <u>e.g.</u>, <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 476 (2d Cir. 2006). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. <u>See</u>, <u>e.g.</u>, <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328, 337 (2d Cir. 2006); <u>Still v. DeBuono</u>, 101 F.3d 888, 891 (2d Cir. 1996). The pleader may not rely, however, on allegations that are only bare

8

legal conclusions, see Starr v. Sony BMG Music Entm't, 592 F.3d
314, 317 n.1 (2d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S.
662, 678-79 (2009)), or "legal conclusions couched as factual
allegations." Id. at 321 (quoting Port Dock & Stone Corp. v. Old
Castle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007)).

       The traditional test on a Rule 12(b)(6) motion required that
the complaint not be dismissed "'unless it appears beyond doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief.'" Leibowitz v. Cornell
Univ., 445 F.3d 586, 590 (2d Cir. 2006) (quoting Conley v. Gibson,
355 U.S. 41, 45-46 (1957)). The Supreme Court has since rejected
this  formulation, however, and hence a complaint is now subject to
dismissal unless its factual allegations, if credited, make the
claim "plausible." See Iqbal, 556 U.S. at 678; Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 560-61 (2007). The court thus must look to
the well-pled factual allegations and determine whether, if true,
those allegations would permit a reasonable inference that the
defendant is liable. See, e.g., Iqbal, 556 U.S. at 677-79. While
this  does  not  require  a  party  to  plead  "detailed  factual
allegations" to survive a motion to dismiss, Starr, 592 F.3d at 321
(quoting Twombly, 550 U.S. at 555), it does require that "'the
plaintiff plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). Thus, "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. Iqbal, 556 U.S. at 678. In short, the pleading must do more than "tender[] naked assertion[s] devoid of further factual enhancement," id. (internal quotation marks omitted), and in doing so must "'raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)(quoting Twombly, 550 U.S. at 555). "This standard 'is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 678). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678. Thus, although a plaintiff need not make out a prima facie case at the pleading stage, he must allege sufficient facts to plead a plausible Title VII claim. See, e.g., Vega v. Hempstead Union Free School Dist., __ F.3d __, 2015 WL 5127519, *8-12 (2d Cir. Sept. 2, 2015)(Title VII); EEOC v. Port Auth. Of New York & New Jersey, 768 F.3d 247, 254 (2d Cir. 2014) (Equal Pay Act claim).

When addressing a 12(b)(6) motion, the court may not consider evidence proffered by the moving party or its opponent. Nonetheless, the court may review, in addition to the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. See, e.g., ATSI Commc'ns, Inc., 493 F.3d at 98; Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999).

In view of plaintiff's status as an untutored pro se litigant, we read his complaint and motion papers liberally and derive from them the most reasonable claims and arguments that they may be read to imply. See, e.g., Triestman, 470 F.3d at 474-76. Moreover, liberal pleading rules apply "with particular stringency to [pro se] complaints of civil rights violations." Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003). However, the "plausibility" standard articulated in Twombly and Iqbal applies to the pleadings of pro se plaintiffs as well as to those of represented litigants. See, e.g., Teichmann v. New York, 769 F.3d 821, 825 (2d Cir. 2014); see also Muhammad v. Juicy Couture/Liz Claibourne, Inc., 2010 WL 4032735, *2-3 (S.D.N.Y. July 30, 2010).

11

II. <u>The Title VII Claim: Legal Standards</u>

Plaintiff's <u>pro se</u> allegations are articulated as pressing a claim under Title VII, based on the Union's failure properly to represent his interests. Title VII makes it unlawful for a labor organization "to discriminate against [] any individual because of his race, color, religion, sex, or national origin" or "to cause or attempt to cause an employer to discriminate against an individual." 42 U.S.C. §§ 2000e-2(c)(1),(3). Nonetheless, the courts have required the plaintiff asserting such a claim to plead and prove the elements of a claim of denial of fair representation as well as the elements of a claim of discrimination. <u>See</u>, <u>e.g.</u>, <u>Tappin v. Metro. Suburban Bus Auth.</u>, 2014 WL 1330649, *4 (E.D.N.Y. March 31, 2014)(citing cases); <u>Klaper v. Cypress Hills Cemetery</u>, 2012 WL 959403, *7-8 (E.D.N.Y. March 21, 2012).

To assert and sustain a claim for discrimination against a union for failure to provide adequate representation, the plaintiff must plead and prove that (1) that the employer "committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the union's actions were

12

motivated by discriminatory animus." Vaughn v. AT&T, 92 F. App'x
21, 23 (2d Cir. 2004). Accord, e.g., McIntyre v. Longwood Central
School Dist., 280 F. App'x 44, 49 (2d Cir. 2010); Tappin, 2014 WL
1330649 at *4-5; Pinkard v. New York City Dep't of Educ. 2012 WL
1592520, *7 (S.D.N.Y. May 2, 2012); Ross v. Communication Workers,
Local 1110, 1995 WL 351462, *5-7 (S.D.N.Y. June 9, 1995), aff'd
mem., 100 F.3d 944 (2d Cir. 1996). The plaintiff must also
demonstrate resultant injury. See, e.g., Spellacy v. Airline Pilots
Ass'n, 156 F.3d 120, 130 (2d Cir. 1998).


    Since plaintiff must plead an adequate ground for a claim of
denial of fair representation, we first note that the court's
review of such a claim must be "highly deferential, recognizing the
wide latitude that [unions] need for the effective performance of
their bargaining responsibilities." Air Line Pilots Ass'n Int'l v.
O'Neill, 499 U.S. 65, 78 (1991). Thus a union breaches its duty of
fair representation "only when [its] conduct toward a member of the
collective bargaining unit is arbitrary, discriminatory, or in bad
faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). To meet the
requirement of arbitrariness, the plaintiff must show that the
union's conduct "is so far outside a wide range of reasonableness
as to be irrational." Air Line Pilots Ass'n, 499 U.S. at 67. As for
"bad faith", the plaintiff must demonstrate that the union's

actions amount to "fraud, deceitful action or dishonest conduct."
Klaper, 2012 WL 959403 at *7 (quoting Henry v. United Parcel Serv.,
Inc., 602 F. Supp.2d 419, 423 (E.D.N.Y. 2009)). The union's "duty
of fair representation is not breached where the union fails to
process a meritless grievance, engages in mere negligence conduct,
or fails to process a grievance due to error in evaluating the
merits of the grievance." Cruz v. Local Union No. 3 of Int'l Bhd.
of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994).

Finally, the plaintiff cannot plead or prove discriminatory
intent with conclusory allegations to that effect. E.g., Tappin,
2014 WL 1330649 at *5 (citing cases). Rather, he must allege and
plead facts plausibly suggesting that the union was motivated by
unlawful discriminatory animus or a desire to retaliate for
protected conduct. Id. at *4 (quoting Operaji v. United Fed. of
Teachers, 418 F. Supp.2d 139, 146 (E.D.N.Y. (2006)).

III.  Assessment of the Title VII Claim

In seeking to assert a Title VII claim based on the Local's
failure to represent the plaintiff's interests, his pleadings fail
in several respects. He admits that the union represented him in
the arbitral proceeding, and he offers no set of facts -- as

14

distinguished from conclusory assertions -- that would plausibly suggest that the Local engaged in arbitrary or bad-faith conduct. At best, his allegations that the appointed attorney was new and inexperienced, that he appeared only at the start of the arbitration proceeding, that he urged plaintiff to testify, that he did not present evidence, and that he did not insist that Mr. Ruffin (whom plaintiff allegedly threatened) be called imply no more than negligence on the part of the Local and its attorney.[2] As for his complaint that the attorney was officially representing the Local instead of him, that is in fact the required posture for such a proceeding. See, e.g., Waterman v. TWU Local 100, 176 F.3d 150, 150 (2d Cir. 1999). (See Farkas Decl. ¶ 10 n.1). Moreover, plaintiff never offers any factual basis for inferring that this dual role of the lawyer posed a conflict of interest that precluded the attorney from doing anything to assist his case. Indeed, quite to the contrary, the arbitral awards, as well as the attorney's Position Statement, make plain that counsel defended plaintiff's interests and argued against termination, and that his arguments prevailed at least with respect to the charges based on the events of December 11, 2012. (Farkas Decl. Exs. C-E).

As for the requirement that the plaintiff plead a factual

---

[2] In any event, he fails to suggest why Mr. Ruffin's testimony would have been helpful to him.

basis for inferring discriminatory or retaliatory animus by the Local, plaintiff fails to do so other than in purely conclusory terms. In his complaint, and then again in his March 25 letter brief, he simply recites that most of the union membership is minority ("[B]lack and Spanish"), and asserts that since the Union purportedly does not adequately represent the interests of its members in disciplinary proceedings, it is guilty of discrimination. (Compl. Attach. at p. 3 (this "leads me to believe there is a[] conspiracy to wrongfully terminate black and Spanish employees at will."); March 25 letter at 13 ¶ 25 ("These rights that are being violated are mostly black and Spanish people that cover mostly 80 percent or more of the MTA's labor workforce. So a black and Spanish person[']s rights in employment will be violated more.")). This form of pleading, even liberally construed, is plainly inadequate to state a claim premised on discrimination. See, e.g., Pinkard, 2012 WL 1592520 at *9 (citing inter alia Reid v. Hebrew Home for the Aged, 2012 WL 698135, *2 (S.D.N.Y. March 5, 2012); Alvarez v. Rosa, 2012 WL 651630, *4 (S.D.N.Y. Feb. 28, 2012)); Operaji, 418 F. Supp.2d at 146.

Still another failing -- albeit not mentioned by the Local -- is that it appears that plaintiff's administrative charge was limited to an assertion of retaliation, and hence he failed to

16

exhaust the discrimination claim that he now asserts.[3] Indeed, the SDHR Determination first recites that the charge was of "an unlawful discriminatory practice relating to employment because of opposed discrimination/retaliation in violation of New York Exec. Law art. 15 . . . ." The agency goes on to note that "[c]omplainant has alleged that he was retaliated against because he filed a discrimination complaint against members of Local 100." The Determination then recites that Sales had offered no evidence that he had ever made such a complaint about discrimination, and it concluded that "[t]he record as a whole does not support Complainant's claim that Respondent treated him in a retaliatory manner, as Complainant could not provide any evidence that he had previously opposed discrimination from respondent." On that basis the SDHR dismissed the complaint. (Farkas Decl. Ex. F).

In plaintiff's complaint in this court, he does not allege that the Local engaged in retaliation against him. Rather, as noted, he asserts a theory -- however skeletally propounded -- that the Local was motivated by racial or ethnic bias. Since a plaintiff asserting a claim under Title VII must first exhaust his

---

[3] The exhaustion defense is waivable, though the court may excuse a defendant's initial failure to assert it. See generally Belgrave v. Pena, 254 F.3d 384, 387 (2d Cir. 2001); Francis v. City of New York, 200 F.3d 763, 765-68 (2d Cir. 2000).

17

administrative remedies by presenting the same claim to the appropriate administrative agency, 42 U.S.C. § 2000e-5(e), a statutory claim first aired in court must fail unless it was "reasonably related" to the claim pressed before the agency. E.g., Williams v. New York City Housing Auth., 458 F.3d 67, 70 (2d Cir. 2006). "A claim raised for the first time in the district court is 'reasonably related' to the allegations in an EEOC charge 'when the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Holtz v. Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2010). That was clearly not the case here. The retaliation claim that plaintiff asserted in the SDHR turns on whether the complainant engaged in protected activity before the employer's adverse action and whether that adverse action was undertaken in circumstances suggesting that it was in retaliation for the protected activity. Those questions do not require an exploration of whether the employer harbored, and acted upon, racial or similar animus, and it is apparent from the SDHR Determination that the agency did not undertake such an investigation. Rather, in disposing of plaintiff's complaint it relied exclusively on the absence of evidence that Sales had engaged in protected activity before the MTA's adverse actions.

IV. Assessment of the ADEA Claim

As for the plaintiff's invocation of the ADEA, his complaint and his subsequent briefing are entirely silent as to the factual basis, if any, for a claim that the Local was motivated by age-based animus. That alone demonstrates the legal insufficiency of the pleading. In addition, for reasons noted with respect to plaintiff's reference to race-based animus, a claim under the ADEA must also be administratively exhausted before it can be aired in court, 29 U.S.C. § 626(d)(2), see, e.g., Mohamed v. NYU, 2015 WL 3387218, *9 (S.D.N.Y. May 21, 2015)(citing cases), and there is no indication that plaintiff ever did so. Hence the claim must fail for this reason as well.

V. The Fair-Representation Claim

Even if plaintiff's allegations against the Local were deemed, in the alternative, to constitute a federal claim for denial of fair representation, that claim too would fail. The statute of limitations for such a claim is six months, see, e.g., DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169 (1983); Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29,

19

32 (2d Cir. 2000),[4] and the limitations period runs from the date on which the plaintiff learned, or had reason to learn, of the violation. See, e.g., Kalyanaram v. American Ass'nof University Professors at New York Inst. of Tech., Inc., 742 F.3d 42, 46 (2d Cir. 2014); White v. White Rose Food, A Div. of Digiorgio Corp., 128 F.3d 110, 114 (2d Cir. 1997). In this case the adequacy, or inadequacy, of the Local's performance was evident to plaintiff no later than at the arbitral hearing, and his arguably resultant injury -- in the form of the arbitrator's award upholding termination -- was inflicted on July 8, 2013. Thus plaintiff's filing deadline was January 8, 2014 or shortly thereafter (depending on when he learned of the arbitrator's award). Yet plaintiff did not commence this lawsuit, as measured by receipt of the complaint by the Pro Se Clerk, until October 7, 2014.[5] Since plaintiff does not suggest any basis for tolling the statute of limitations, his hypothesized fair-representation claim is time-barred.[6]

---

[4] This limitations period applies to both individual and hybrid suits. See, e.g., Bryant v. American Fed. of Musicians, 2015 WL 3644075, *8 (S.D.N.Y. June 1, 2015)(citing cases).

[5] Indeed, plaintiff signed and dated the complaint the same day.

[6] The state-law equivalent of the federal fair-representation claim is limited by a still shorter, four-month, statute of limitations. See, e.g., Ifill v. New York State Court Officers

VI. The State-Law Claims

As noted, plaintiff invokes both the State Human Rights Law, N.Y. Exec. L. § 296, and the City Human Rights Law, NYC Admin. Code §§ 8-107(1)(a) & (c), as claims parallel to his Title VII claim. Since, however, Sales filed his charge with the NYSDHR, these claims are barred by the election-of-remedies provisions of N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8-502(a). See, e.g., York v. Ass'n of the Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002); Klaper, 2012 WL 959403 at *13-14.

CONCLUSION

For the reasons stated, we recommend that defendants' motion to dismiss be granted. Since plaintiff is proceeding pro se, the dismissal should be without prejudice to his filing an amended complaint within 30 days after adoption of this Report and Recommendation if he is able to plead one or more colorable claims consistent with the legal requirements that we have summarized

---

Ass'n, 655 F. Supp.2d 382, 394 (S.D.N.Y. 2009)(citing N.Y. C.P.L.R. § 217(2)(a)).

here.[7]

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 1350, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); Thomas v. Arn, 474 U.S. 140, 150 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'y. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

---

[7] By an order dated April 6, 2015 we directed that defendants address the question of whether their attorney should be disqualified based on his participation in the arbitral proceeding. In view of our recommended disposition of the dismissal motion, the issue appears to be moot. In any event we see no current basis to disqualify the attorney since he represented the Union, not the plaintiff, and since there is no evident reason for him to be called as a witness by defendants.

Dated: New York, New York
       September 16, 2015


_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

**Copies of the foregoing Report & Recommendation have been mailed today to:**

**Lavien Sales**
PO Box 1179
New York, NY 10027
PRO SE

**Steven Charles Farkas, Esq.**
Colleran, O'hara & Mills L.L.P.
100 Crossways Park Dr. W. Ste 200
Woodbury, NY 11797