UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

LAVIEN SALES,

                              Plaintiff,

            -against-                                            14-CV-8091 (PAC)(SN)

TWU LOCAL 100 VICE PRESIDENT BRIAN            **ORDER AND**
CLARK, et al.,                                **REPORT &**
                                             **RECOMMENDATION**
                              Defendants.

----------------------------------------------------------------X
----------------------------------------------------------------X

LAVIEN SALES,

                              Plaintiff,                          15-CV-8689 (PAC)(SN)

            -against-                                            **ORDER AND**
                                                                 **REPORT &**
NEW YORK CITY METRO TRANSPORTATION           **RECOMMENDATION**
AUTHORITY/MABSTOA,

                              Defendants.

----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE Paul A. Crotty:**

       Plaintiff LaVien Sales is proceeding pro se and in forma pauperis. The Court is

consolidating Plaintiff's two related cases, currently under docket numbers 14 Civ. 8091

(PAC)(SN) (the "2014 Case") and 15 Civ. 8689 (PAC)(SN) (the "2015 Case"), and recommends

dismissing the 2015 Case without prejudice. In addition, the Court construes ECF Documents 51,

52, 56, and 58 of the 2014 Case as the final amended complaint for Plaintiff's ongoing case. The

Court orders service on those Defendants who have not yet been served and who are not recommended for dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Dismissal of the 2014 Case with Leave to Amend**

On November 30, 2015, District Judge Paul A. Crotty adopted in full the Report and Recommendation of Magistrate Judge Michael H. Dolinger and dismissed the claims in the 2014 Case with leave to amend.

At that time, the 2014 Case alleged claims of discrimination against the Plaintiff by officials of the Local 100 of the Transport Workers Union (the "Union"). Judge Dolinger recommended dismissal of the claims against the Union brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., finding that the allegations were conclusory and therefore inadequate to satisfy the pleading requirements. Additionally, Judge Dolinger noted that the Plaintiff's administrative charge was limited to an assertion of retaliation, and therefore he failed to exhaust any discrimination claim now pled.

Judge Dolinger further recommended dismissal of any claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, on the grounds that the Plaintiff's complaint was entirely silent as to any factual basis for a claim of age discrimination. Moreover, there was no evidence that the Plaintiff had administratively exhausted his remedies, providing an alternative basis to dismiss his ADEA claims.

To the extent his complaint was liberally construed to include a federal claim for the denial of fair representation by the Union, Judge Dolinger recommended dismissal on statute of limitations grounds. Having filed his complaint later than six months from the date on which the

Plaintiff learned or had reason to know of the violation, the Plaintiff failed to suggest a basis for tolling the statute of limitations.

Finally, Judge Dolinger noted that the Plaintiff filed his charge with the New York State Division of Human Rights and, therefore, is barred from pursuing claims in federal court under the State and City Human Rights Laws pursuant to the election-of-remedies provisions of N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8-502(a).

Recognizing, however, that the Plaintiff was proceeding pro se, Judge Dolinger recommended – and Judge Crotty permitted – that the Plaintiff be granted leave to amend his complaint to attempt to cure these defects.

## II.    The 2015 Case and the Amended Complaint

What followed, however, was not a clear amended complaint intended to address the deficiencies identified in Judge Dolinger's Report and Recommendation. First, on November 4, 2015, the Plaintiff filed the 2015 Case. That complaint named as defendants Metropolitan Transportation Authority ("MTA"), the New York City Transit Authority ("NYCTA"), and the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"). Using the Court's form complaint for employment discrimination, the Plaintiff indicated that his claims were brought under Title VII, and the New York State and City Human Rights Laws. See 2015 Case at ECF No. 2. Although the complaint has a check mark to indicate that the Plaintiff is bringing claims under the ADEA and based on "age," both marks are scratched off, suggesting that he is not, in fact, pursuing an age discrimination claim. There is, moreover, nothing factually in the complaint to suggest a basis for an age discrimination claim. Attached to this complaint are his Equal Employment Opportunity Commission Dismissal and Notice of Rights, dated July 31, 2015 (advising him of the statutory requirement that he file any complaint within 90 days of

3

receipt of the Notice), and a Verified Complaint filed with the New York State Division of

Human Rights. The complaint further alleged that he would like to "Amend and ad [sic] my

former employer the MTA employees" to the 2014 Case. See 2015 Case at ECF No. 2 at ¶ 8.

Plaintiff was directed on December 14, 2015, to file an amended complaint in the 2015 Case to

state more plainly a plausible claim for discrimination. See 2015 Case at ECF No. 5. The

Plaintiff has not filed anything further in the 2015 Case, and no defendants have been served in

that case.

    Second, in Judge Crotty's decision adopting the Report and Recommendation in the 2014

Case, he deemed a document filed by the Plaintiff entitled "Reply to 10-5-2015 Order &

Complaint" to be the Plaintiff's amended complaint.[1] See 2014 Case, ECF No. 34. Thereafter,

the Union defendants moved to dismiss the amended complaint. See 2014 Case, ECF No. 40.

That motion remains pending. But the Plaintiff has since filed numerous letters and motions

suggesting that he seeks to sue his former employer and others for discrimination.

## DISCUSSION

### I.    Consolidation of Submissions as Final Amended Complaint

    The Court issued an Order on March 9, 2016, asking Plaintiff to clarify the purpose of the

numerous letters filed in the 2014 Case and their relationship to the 2015 Case. 2014 Case, ECF

No. 55.

    Based on the documents Plaintiff filed before and in response to the March 9 Order, the

Court finds that Plaintiff intends to have the two actions consolidated. See 2014 Case, ECF No.

57 at ¶¶ 25–26 ("I believe the proper thing to do is consolidate the claims together. . . ."). For the

---

[1] "Reply to 10-5-2015 Order" likely refers to an order I issued on October 4, 2015 directing the parties to
file a joint letter on the status of the claims. See 2014 Case, ECF No. 30.

purposes of consolidation, both of Plaintiff's pending cases will now be under the umbrella of the 2014 Case.

After reviewing the Plaintiff's submissions, the Court construes ECF Documents 51, 52, 56, and 58 as the operative complaint in the surviving action, the 2014 Case. As Plaintiff has already submitted several amended complaints in the 2014 Case and has been ordered to amend his complaint in the 2015 Case, these documents together will comprise Plaintiff's final amended complaint with respect to all claims that he has presented to this Court. Plaintiff may not further amend his complaint.

## II.      Dismissal of 2015 Case

Pursuant to Federal Rule of Civil Procedure 41(a)(1), "an action may be dismissed at the plaintiff's request" by Court order. The Court construes Plaintiff's statement that consolidating the 2014 and 2015 Cases is "the proper thing to do," (2014 Case, ECF No. 57 at ¶¶ 25–26), as a request to dismiss the 2015 Case. Because the Court is consolidating the 2014 Case and the 2015 Case and proceeding with several of Plaintiff's recent submissions as the final amended complaint under the 2014 Case docket number, the Court recommends dismissal of the 2015 Case. This dismissal should be without prejudice to pursuing any claims initially brought in the 2015 Case that might otherwise by barred by the relevant statute of limitations.

## III.     Dismissal of Improper Defendants and Claims

The Court may dismiss on its own motion any claim that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief can be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). Such dismissal is appropriate where, even when liberally construed, the complaint fails to allege grounds for imposing liability

on the defendant. See DiProjetto v. Morris Protective Serv., 306 F. App'x 687, 688 (2d. Cir. 2009).

In determining whether a complaint states a claim on which relief can be granted, the Court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When a plaintiff proceeds pro se, the "court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted) (quoting Harris, 572 F.3d at 72). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Chavis, 618 F.3d at 170.

Because Plaintiff fails to state a claim on which relief can be granted for several of his claims, the Court should order partial dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). The

Court previously notified Plaintiff of deficiencies in his pleadings, both through Judge

Dolinger's R&R and the Court's order to amend the complaint in the 2015 proceeding. After

reviewing the amended complaint and construing all claims in the light most favorable to the

plaintiff, the Court finds for the reasons stated below that Plaintiff has failed to plead sufficient

facts to state claims for (i) discrimination against certain defendants, (ii) defamation, and (iii)

violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§

1961–68.

Dismissal of Plaintiff's claims before many of the defendants have been served conserves

judicial resources and avoids burdening these improper defendants with litigation expenses. The

Court anticipates that some surviving defendants will move to dismiss the newly deemed final

amended complaint, and the Court's recommendation for sua sponte dismissal is without

prejudice to the defendants making any appropriate motion.

Plaintiff provides what appears to be a full and final list of the defendants that he intends

to sue in the caption of ECF Document 58 and in paragraph 10 of Document 59 in the 2014

Case. Although this list does not include the MTA, the Court construes them as a defendant

because the Plaintiff alleges various claims against the MTA throughout this complaint. See

Lopez v. State of N.Y. Dep't of Correctional Servs., 94 Civ. 6708 (DC), 1996 WL 396152, at *1

(S.D.N.Y. July 15, 1996). For the reasons set forth below, I recommend that the following

defendants be dismissed.

A.      **Employment Discrimination**

Plaintiff brings claims under various federal, state and local employment discrimination

statutes.

### 1.     Federal Claims

Title VII is the federal statute that prohibits employers from discriminating against an employee based on, among other reasons, race or color. 42 U.S.C. § 2000e et seq. Claims under Title VII cannot be brought against individual defendants. They can be brought only against employers. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313–14 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); see also Darcy v. Lippman, 356 F. App'x 434, 436–37 (2d Cir. 2009) (noting that Title VII does not provide for actions against individual supervisors).

The federal Age Discrimination in Employment Act ("ADEA") forbids employment discrimination against anyone at least 40 years of age. Like Title VII, this statute applies only to employers; it does not "subject[] individuals, even those with supervisory liability over the plaintiff, to personal liability." Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011) (citing Tomka, 66 F.3d at 1313); Altman v. New York City Dep't of Educ., 06 Civ. 6319 (HB), 2007 WL 869021, at *2 (S.D.N.Y. Mar. 23, 2007). As discussed above, the Plaintiff scratched off his initial checkmark on the form complaint in his 2015 Case indicating claims based on age. And nothing in that complaint or the newly deemed final amended complaint speaks about the Plaintiff's age or that he was discriminated on such basis. Accordingly, to the extent the Court construes the Plaintiff as having brought age discrimination claims, I recommend that they be dismissed for failure to state a claim.

Thus, at most, only the MTA, NYCTA and/or MaBSTOA can be held liable under Title VII for employment discrimination. All Title VII claims against individual defendants, and all age discrimination claims under any statute should be dismissed.

### 2.      State and City Human Rights Law Claims

The New York State and New York City human rights laws also make it unlawful for an

employer to discriminate against an employee on the basis of, among other things, age, race or

color. N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107. Under these statutes, however,

claims may be brought against individuals. See Feingold v. New York, 366 F.3d 138, 157–59 (2d

Cir. 2004) (holding that individuals are subject to liability under city and state human rights

laws). To assert a claim against individual defendants under city or state human rights laws, "a

plaintiff must either show direct, personal involvement in discriminatory conduct, or that the

defendant 'aided and abetted' the discrimination or retaliation at issue." Zambrano-Lamhaouhi v.

N.Y. City Bd. of Educ., 866 F. Supp. 2d 147, 162–63 (E.D.N.Y. 2011) (citing Feingold, 366 F.3d

at 157–59).

### a.   Election-of-Remedies

New York Executive Law § 297(9) provides, however, that any person who claims "to be

aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of

appropriate jurisdiction . . . and such other remedies as may be appropriate . . . unless such

person had filed a complaint hereunder or with any local commission on human rights. . . ." N.Y.

Exec. L. § 297(9); see also N.Y.C. Admin. Code § 8-502(a).

The Court of Appeals for the Second Circuit has consistently held that "the remedies of

administrative review through the Human Rights Division or judicial review are mutually

exclusive." Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 882 (2d Cir. 1995) (citing Pan

Am. World Airways v. N.Y. State Human Rights Appeal Bd., 61 N.Y.2d 542, 548 (1984)).

Essentially, once a plaintiff has brought a complaint before the New York State Department of

Human Rights ("NYSDHR"), "that becomes the sole avenue of relief, and subsequent judicial

action on the same complaint" is barred. Id. at 884 (quoting Magini v. Otnorp, Ltd., 180 A.D. 2d 476, 477 (1st Dep't 1992) (internal quotations omitted); see also York v. Ass'n of the Bar of the City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002) (holding that claims brought in front of the NYSDHR "may not be brought again as a plenary action in another court"). The only exceptions to this general rule are provided in Executive Law § 297(9), which states that "where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division." N.Y. Exec. L. § 297(9).

The Plaintiff has attached a copy of his Verified Complaint filed with the State Division of Human Rights. See 2015 Case, ECF No. 2. Thus, he has at least initiated his election to pursue his state and city claims at the Human Rights Division. Accordingly, the Court recommends ordering the Plaintiff to show cause that his complaint filed with the Human Rights Division has been dismissed on the grounds of (1) administrative convenience; (2) untimeliness, or (3) annulment by the Plaintiff. If the Plaintiff cannot demonstrate such a dismissal, then he will be deemed to have elected to pursue these claims in the Human Rights Division and, therefore, the Court may not exercise jurisdiction over his claims based on the State and City Human Rights Laws.

### b. Claims under the State and City Human Rights Laws

Even if the Plaintiff can demonstrate that he has not elected to pursue his State and City Human Rights Law claims at the Human Rights Division – and, thus, such claims would not be barred as a matter of law – I recommend dismissing certain individual defendants against whom the Plaintiff has failed to allege a plausible claim of discrimination. His allegations as to these

individuals, which are described in more detail below, are conclusory and vague and do not make out a claim for discrimination.

NYSHRL discrimination claims are analyzed under the same rubric as Title VII. <u>See</u> <u>Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.</u>, 716 F.3d 10, 14 (2d Cir. 2013). In order to establish a disparate treatment claim under Title VII and NYSHRL, the plaintiff must satisfy a three-part burden-shifting test. <u>See</u> <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216–17 (2d Cir. 2005) (applying the same burden-shifting analysis applied to claims brought under Title VII to claims brought under the state law). "Under this test, a plaintiff establishes a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 80 (2d Cir. 2010). If the plaintiff succeeds in showing a prima facie case, then a presumption of discrimination arises and the burden shifts to the defendant to present a legitimate, non-discriminatory explanation for the adverse employment action. <u>Id</u>. If the defendant presents such a reason, "the presumption of discrimination . . . drops out of the analysis . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." <u>Dawson</u>, 398 F.3d at 216 (quoting James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000)).

To survive a motion to dismiss, a plaintiff is not required to plead a prima facie case of employment discrimination. <u>See</u> <u>La Grande v. DeCrescente Distr. Co.</u>, 370 F. App'x 206, 211 (2d. Cir. 2010). Instead, if the plaintiff presents "minimal evidence suggesting an inference that the employer acted with discriminatory motivation, such a showing will raise a temporary presumption of discriminatory motivation." <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 311 (2d

Cir. 2015) (discussing the "reduced requirements . . . in the initial phase of a Title VII litigation").

In an attempt to clarify the proper pleading standard in employment discrimination cases, the Court of Appeals for the Second Circuit recently held that to survive a motion to dismiss, a plaintiff need only "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 86 (2d Cir. 2015). To make the plausibility determination, the court's inquiry is guided by several considerations. First, the court must determine whether the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vega, 801 F.3d at 86 (quoting Iqbal, 556 U.S. at 678). Second, the court should "draw on its judicial experience and common sense," Iqbal, 556 U.S. at 679, while being "mindful of the elusive nature of intentional discrimination." Vega, 801 F.3d at 86 (quoting Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 255 n.8 (1981)). Finally, the court must remember that "[o]n a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.* whether plaintiffs allege enough to 'nudge their claims across the line from conceivable to plausible.'" Vega, 801 F.3d at 87 (quoting Twombly, 550 U.S. at 570). In sum, at the pleading stage, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 86.

NYCHRL employment discrimination claims must be analyzed "separately and independently from any federal and state law claims, construing its provisions broadly and in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75 (2d Cir. 2015) (quoting Albunio v. City of N.Y., 16 N.Y.3d 472, 477–78 (2011)). "[I]nterpretations of state and federal civil rights statutes can serve only as a floor below which the NYCHRL cannot fall." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009)). Additionally, the NYCHRL requires that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purpose thereof, regardless of whether federal or New York State civil and human rights laws . . . have been so construed." Mihalik, 715 F.3d at 109 (quoting the Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85). To survive a motion to dismiss, the plaintiff must allege "factual allegations that [he] was adversely treated under circumstances giving rise to an inference of discrimination. . . ." Llanos v. City of N.Y., 129 A.D.3d 620, 620 (1st Dep't 2015). "Courts consider the 'totality of circumstances' and the 'overall context in which the challenged conduct occurs' in order to discern whether a cause of action is available under the NYCHRL." Shein v. N.Y. City Dep't of Ed., 15 Civ. 4236 (DLC), 2016 WL 676458, at *9 (S.D.N.Y. Feb. 18, 2016) (quoting Mihalik, 715 F.3d at 113).

The following is a non-exhaustive list of relevant facts pled by the plaintiff in support of his claims under the NYSHRL and NYCHRL:

Robert Felman, an MTA employee (and "a white male"), allegedly delayed issuing workers compensation checks, or wrongfully paid a portion of Plaintiff's check to Plaintiff's law firm. See 2014 Case, ECF No. 58 at ¶¶ 20, 23, 26–27. Plaintiff does not allege that this was an

adverse employment action or that the delay was motivated by improper animus. Similarly, Patrick Lyons and Joseph Micelotta, two other MTA employees, were involved in delays of the Plaintiff's pension payments. Id. at ¶¶ 50–55, 70–73. Other than stating that defendant Micelotta is a "white male," the Plaintiff does not allege any racial animus or that he suffered from an adverse employment action. Evette Vargas, another MTA employee, is accused of having failed to investigate the Plaintiff's wrongful termination. Id. at ¶¶ 76–80. The Plaintiff merely alleges that defendant Vargas is a "Spanish female."

The Plaintiff alleges that he "felt discriminated against by General dispatcher Jimmy Moats" because Moats required the Plaintiff to obtain doctor's notes while he was on approved medical leave. Id. at ¶ 4–5. He later asserts that Moats tried to take back a check, claiming the Plaintiff was not entitled to it, and they got into a fight over the check. Id. at ¶¶ 14–15. The Plaintiff alleges that he "received harassment from Omar Bolano," who is the depot support services superintendent. Id. at ¶¶ 8–10. This harassment, however, appears to relate to an injury that Bolano wanted the Plaintiff to have examined by the medical department and the Plaintiff refused. There are no non-conclusory allegations that such conduct was motivated by race.

Monique Baptise is a "representative of the MTA" who filed "several false statements to the unemployment [Board] to fraud and defraud me out of rights in employment." Id. at ¶ 19. Denise Washington is an MTA employee who drafted a 2012 disciplinary notification without authority to do so. 2014 Case, ECF No. 52 at ¶ 20. Hillary Tomlinson is apparently the Bronx Labor Relations Director for MTA and allegedly refused to dismiss two "unfounded" violations against Plaintiff. Id. at ¶¶ 246–47. Similarly, Thomas Hill, an MTA employee, refused to discipline another employee after the Plaintiff brought to his attention certain misconduct. Id. at ¶ 7. None of the allegations against these people suggests that race was a motivating factor.

Rodney Goddard allegedly reported false and defamatory statements about the Plaintiff that were used against him. 2014 Case, ECF No. 52 at ¶¶ 47–53. Chris Sohl was verbally abusive toward the Plaintiff, and submitted a false report at defendant Gatling's request. 2014 Case, ECF No. 52 at ¶¶ 34–37; ECF No. 56 at 14.[2] AK Jeffery is a superintendent who allegedly testified at the arbitration hearing that his supervisor had told him to "look after GS Sheila Gatling" and later filed a false report against Plaintiff. 2014 Case, ECF No. 58 at ¶ 17. Again, there are no plausible factual allegations that these defendants' conduct was motivated by race.

"SLD Lamaze" and "C Johnson" are not mentioned at all in the complaint documents except in the captions and in the listings of individuals that the Plaintiff wishes to sue. Accordingly, they should be dismissed as well for failure to state a claim.

Finally, the Plaintiff seeks to hold "accountable" former MTA Presidents Howard Roberts and Carmen Bianca. See 2014 Case, ECF No. 58 at ¶¶ 87–89. He fails, however, to allege that they were involved in any way in the decisions related to his employment and termination.

The Plaintiff has failed to allege plausible claims of discrimination under both the NYSHRL and NYCHRL against these individual defendants. Although he has alleged that his employer took adverse employment action by firing him from his job as an MTA bus driver, as to certain defendants, he has failed to plead that they were directly involved in that decision, or that they engaged in discriminatory conduct or aided and abetted such discriminatory conduct. "Naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to

---

[2] New York imposes a one-year statute of limitations on defamation claims. CPLR § 215(3). Accordingly, any defamation claim involving statements made in 2012 would be time barred.

withstand a motion to dismiss." <u>Doe v. Columbia Univ.</u>, 101 F. Supp. 3d 356, 368 (S.D.N.Y. 2015) (quoting <u>Sanders-Peay v. NYC Dep't of Ed.</u>, 14 Civ. 4534 (CBA)(MDG), 2014 WL 6473507 (E.D.N.Y. Nov. 18, 2014)). Where, as here, the plaintiff has "done no more than point to various ways in which he feels [he] was mistreated and argue it must have been because of [his race]," the plaintiff has failed to meet the plausibility standard. <u>Campbell v. N.Y. City Transit Auth.</u>, 93 F. Supp. 3d 148, 173 (E.D.N.Y. 2015).

Thus, should the Court determine that the Plaintiff's State and City Human Rights Law claims are *not* barred by the election-of-remedies provisions, I recommend that the discrimination claims against these defendants be dismissed under Rule 12(b)(6) for failure to state a claim: Robert Felman; Patrick Lyons; Joseph Micelotta; Evette Vargas; Jimmy Moats; Omar Bolano; Monique Baptise; Denise Washington; Hillary Tomlinson; Thomas Hill; Rodney Goddard; Chris Sohl; AK Jeffery; SLD Lamaze; C Johnson; Howard Roberts; and Carmen Bianca.

**B.      Fraud**

The plaintiff raises numerous allegations of fraud against Sheila Gatling, the General Superintendent of the bus depot where the Plaintiff worked and who was his direct supervisor. He brings similar claims against Ameliz Ramirez, the Union's Director of Labor Relations. These fraud claims are in addition to claims of discrimination brought against these two individuals under the State and City Human Rights Laws. At this stage, I recommend serving these two defendants and allowing them to respond to the allegations set forth against them in the final amended complaint.

### C.     Due Process

Construed liberally, the Plaintiff may be asserting a due process claim in connection with the MTA disciplinary proceeding. He alleges that Daniel Hogan, who appears to be the General Superintendent of the MTA bus depot where the Plaintiff worked, presided over the January 4, 2013 disciplinary hearing at which the Plaintiff was suspended. 2014 Case, ECF No. 52 at ¶ 67. The plaintiff alleges that Hogan did not have sufficient evidence to justify imposing pre-disciplinary suspension. Id. at ¶¶ 70–71. In light of the Court's obligation to construe claims liberally, Hogan should be served and respond to the allegations in the final amended complaint raised against him.

### D.     Union Discrimination

Title VII also implicates the duties of a union, making it unlawful for the union "to discriminate against [] any individual because of his race, color, religion, sex, or national origin" or "to cause or attempt to cause an employer to discriminate against an individual." 42 U.S.C. §§ 2000e-2(c)(1), (3). The Plaintiff's claims against the Union and its officials may also implicate the Union's duty of fair representation.

Judge Dolinger recommended granting the Plaintiff leave to amend his complaint to address the deficiencies in his previous complaint. Because the Union and its employees have appeared, are represented by counsel, and have a pending motion to dismiss the amended complaint as deemed by Judge Crotty, the Court will await a renewed motion to dismiss the claims brought under the final amended complaint. For these reasons, the Court does not recommend sua sponte dismissal against the Union, Brian Clark, Richard Davis, Ken Paige, Ed Pichardo and Dwayne Ruffin. Additionally, the Court will direct service upon Amelia Ramirez,

the Union's Director Labor Relations, to allow her to respond to the allegations of discrimination set forth against her.

The Plaintiff, however, has named additional individuals who work for or with the Union against whom he has failed to plausibly allege a claim of discrimination. Moreover, these defendants may also be improper defendants, as Judge Dolinger has already found that any state law claims against them may be barred by the election-of-remedies provision of New York Executive Law § 297(9), as discussed above. In the Plaintiff's subsequent filings, he has not demonstrated that his complaint filed against the Union with the Division of Human Rights was dismissed on the grounds of (1) administrative convenience, (2) untimeliness, or (3) the annulment of the election of remedies.

Thus, the Court recommends the dismissal of John Samulesen (Union President), Anita Miller (Union official), and Reinaldo Rios (Union Division Chairman). As to Mr. Samulesen, the Plaintiff alleges merely that he sent him a letter to which Mr. Samuelsen did not respond. See 2014 Case, ECF No. 56 at ¶¶ 11–15. Similarly, the Plaintiff alleges that he sent several letters to Anita Miller complaining about "unfair labor practices" by the employer and the Union, and that she took no action. See 2014 Case, ECF No. 58 at ¶¶ 82–85. Finally, Reinaldo Rios is alleged to have submitted false statements in an affidavit connected to Plaintiff's complaint with the NYSDHR. See 2014 Case, ECF No. 52 at ¶¶ 122–139. He also allegedly excluded the Plaintiff for discriminatory reasons from a conversation with Union counsel. Id. at ¶ 132. Even assuming the Plaintiffs' State and City Human Rights Laws claims are not barred by his election of remedies, the allegations against these defendants do not sufficiently plead a claim of discrimination. Because the Plaintiff has been given numerous opportunities to replead his claims, another chance should not be granted.

18

E.       Discrimination by Union Counsel

The Plaintiff has named several Union lawyers whom he alleges discriminated against him. The Court assumes, without deciding, that these defendants are agents of the Union who could be sued for discrimination under the State and City Human Rights Laws. See N.Y. Exec. L. §296(1)(c), (e); N.Y.C. Admin. Code § 8-502(a). The Plaintiff's claims against these lawyers, however, are inadequate to plead a claim for discrimination. Because they are also likely barred by the Plaintiff's election of remedies, the Court recommends dismissal of these claims.

The Plaintiff seeks to sue Denis Engel and Steven Farkas, attorneys at Colleran O'Hara & Mills, LLP, (the "Colleran Firm") who represented Plaintiff in the disciplinary proceedings brought against him by the MTA.[3] Plaintiff alleges that Engel engaged in "improper communications" with the MTA and the arbitrator while Plaintiff was not present. 2014 Case, ECF No. 56 at ¶ 51. He further alleges that Engel submitted an affirmation in Plaintiff's complaint with the NYSDHR, falsely stating that in Plaintiff's 2013 disciplinary proceedings, the Colleran Firm represented the Union, and not Plaintiff. See 2014 Case, ECF No. 52 at ¶ 140. In support of his allegation that the Colleran Firm represented him in an individual capacity, Plaintiff alleges that he discussed his disciplinary proceedings with Engel for two hours on March 22, 2013. Id. at ¶ 141.

Plaintiff alleges that Steven Farkas failed to represent him adequately at his disciplinary proceedings. Specifically, he alleges that Farkas was unfamiliar with the rules and procedures for disciplinary actions, as described in the collective bargaining agreement ("CBA"). Id. at ¶¶ 114,

---

[3] Plaintiff has already brought suit against Engel and Farkas for their roles in representing him at arbitration proceedings; the case was dismissed. See Sales v. Colleran O'Hara & Mills, LLP, et al., 14 Civ. 7677 (LAP) (S.D.N.Y. Nov. 17, 2014). Farkas has appeared as counsel for Defendants in the 2014 Case.

222. He further alleges that Farkas refused to call witnesses or present video evidence that would have corroborated Plaintiff's version of events. Id. at ¶ 105. According to Plaintiff, Farkas and the Colleran Firm provided him with substandard representation due to his race. Id. at ¶ 232. Such conclusory statements are insufficient to nudge his claims from the theoretical to the plausible.

Plaintiff also brings allegations against numerous attorneys who have represented the Union in connection with his claims. Stephen Downs is counsel for the Union whom Plaintiff states he "personally never met" and who submitted an affidavit stating he was satisfied with the work of Engel and Farkas. 2014 Case, ECF No. 56 at ¶¶ 17, 19–28. Arthur Schwartz is the Union's "top lawyer" who allegedly was hired to defend the Union against Plaintiff's claims in his complaint with the NYSDHR. 2014 Case, ECF No. 52 at ¶ 135. Plaintiff alleges that Schwartz was "aware of problems within the MTA," and collaborated in the Union's plan to deprive MTA employees of their rights and job benefits. 2014 Case at ECF No. 58, ¶¶ 91–93. Schwartz allegedly told Plaintiff that if he dropped his human rights claim against the Union, Schwartz would help him file a case against Ramirez and the MTA's Labor Relations Department. Id. at ¶¶ 99–100. Tracy Kiernan is an associate of Arthur Schwartz who treated Plaintiff "horribly" at a hearing. Id. at ¶ 96. Plaintiff alleges that Kiernan grabbed her purse whenever he walked near her and "screamed" at him when he accused her and Schwartz of working together against him. Id. He characterized her as an "extreme racist." Id.

Assuming these individuals could be sued under the State and City Human Rights Laws as agents of the Union, and assuming that such claims against them would not be barred by the Plaintiff's election of remedies as found by Judge Dolinger, the Plaintiff has still failed to plead that these individuals discriminated against him on the basis of his race. Accordingly, I

recommend dismissal of the claims against Denis Engel, Steven Farkas, Stephen Downs, Arthur Schwartz, and Tracy Kiernan.

### F.    Discrimination by MTA Counsel

The Plaintiff seeks to sue to lawyers who represented his former employer, the MTA. He alleges that Mitchell Paluszek is the MTA's "top lawyer" who allegedly conspired with Schwartz in the Union's defrauding scheme and gave Plaintiff "an unfriendly racist vibe" at a hearing. Plaintiff alleges that Paluszek also gave false statements in connection with his complaint to the New York State Division of Human Rights. 2014 Case, ECF No. 52 at ¶¶ 161-63. Craig Costa is an attorney for MTA/NYCTA who allegedly engaged in improper *ex parte* communications with arbitrator Robert Grey. Plaintiff alleges that Costa intimidated Grey by telling him that Plaintiff was a threat to his safety, thereby also prejudicing Grey against Plaintiff. Id. at ¶¶ 101-03.

To the extent the plaintiff alleges claims against Paluszek and Costa, he has failed to plead sufficient facts to establish a plausible claim of discrimination. Furthermore, any claims for defamation would be time-barred. There is no legal basis for these claims and they should be dismissed.

### G.    Discrimination by Arbitrators

Plaintiff sues Robert Grey, who presided over Plaintiff's arbitration hearing, and Thomas Latimer, whom Plaintiff states is the "Arbitration Hearing Director" and may have had some sort of role in Plaintiff's arbitration. Plaintiff alleges that Grey failed to comply with the hearing procedures as prescribed in the CBA. Grey allegedly allowed Ramirez to submit false evidence in the arbitration and included information he knew to be false in his report and decision. After Plaintiff sent Grey an email asking for permission to submit an independent closing brief, Grey emailed Plaintiff's counsel and opposing counsel, granting Plaintiff's request, but directing his

counsel to instruct Plaintiff that all future communications must be made through his attorneys. Plaintiff alleges that Grey did not wish to communicate with him directly because he is "racist." 2014 Case at ECF No. 52, ¶ 115. Plaintiff also alleges that Grey, Latimer, and Engel improperly excluded Plaintiff from a meeting on April 9, 2013, at which they discussed whether Grey should recuse himself from the arbitration. Id. at ¶ 108.

Plaintiff's claims against defendants Grey and Latimer should be dismissed under the doctrine of judicial immunity. Judicial immunity has been extended to "others who perform functions closely associated with the judicial process," when they are performing discretionary acts of a judicial nature that are essential to the judicial process. Cleavinger v. Saxner, 474 U.S. 193, 200 (1985) (doctrine of absolute judicial immunity extends to administrative law judges, hearing examiners, referees or special masters performing judicial functions). Similar to judicial immunity, the doctrine of arbitral immunity provides that "arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for acts within the scope of the arbitral process." Austern v. Chicago Bd. of Options Exch. Inc., 898 F.2d 882, 886 (2d Cir. 1990). Courts have uniformly recognized that arbitrators and organizations that sponsor arbitrations are immune from civil liability for acts performed within the scope of arbitration. Id.; Weinraub v. Glen Rauch Securities, Inc., 399 F. Supp. 2d 454, 464 (S.D.N.Y. 2005); Prudential Bache-Securities (Hong Kong) Ltd. v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc., 289 F. Supp. 2d 438, 440 (S.D.N.Y. 2003). Plaintiff's claims against Gray and Latimer[4] relate to actions taken during the arbitral process and should be dismissed based on arbitral immunity.

Additionally, testifying witnesses at an arbitration hearing are entitled to absolute immunity. See Rolon v. Henneman, 517 F.3d 140, 146 (2d. Cir. 2008). The Plaintiff alleges that

---

[4] Even if Latimer was not involved in any of Plaintiff's arbitration hearings, I would recommend that he be dismissed because Plaintiff has not stated a plausible claim of discrimination against him.

several defendants discriminated against him based on their testimony at the arbitration proceeding. For example, he seeks to sue AK Jeffrey based on the testimony he gave during the arbitration hearing. 2014 Case, ECF No. 58 at ¶ 17. These claims should also be dismissed.

### H.   RICO Allegations

Finally, Plaintiff alleges that various defendants' fraudulent conduct constituted a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"). To state a claim for civil damages under Section 1962, a plaintiff must satisfy a two-fold pleading burden. First, the plaintiff must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962. See Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983). To establish a substantive violation, the plaintiff must allege sufficient facts to satisfy seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Id. (citing 18 U.S.C. § 1964(a)–(c)). After he has satisfying the first step of the inquiry, at step two the plaintiff must allege an injury to "his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); see Moss, 719 F.2d at 17.

The RICO statute contains a list of enumerated crimes that qualify as "racketeering activity." Included in this list are various forms of fraud, including mail fraud, wire fraud and securities fraud. See 18 U.S.C. § 1961(1)(B). Unenumerated acts, however, such as common law fraud, do not qualify as "racketeering activities." See Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd., 154 F. Supp. 2d 682, 690–691 (S.D.N.Y. 2001).

Plaintiff alleges that the MTA failed to discipline its depot managers and supervisors when they filed false disciplinary reports against him. He asserts that the MTA purposefully "drag[s] out" its disciplinary proceedings in order to pressure employees to submit to "unwarranted" disciplinary charges. 2014 Case, ECF 52 at ¶¶ 247–51. Plaintiff specifically alleges facts relating to two separate incidents in 2008 and 2012, when he was subjected to unwarranted disciplinary proceedings based on allegations that his supervisors knew to be false. Id. at ¶ 253–54.

None of the above-listed facts establish any of the enumerated acts that qualify as "racketeering activity" under RICO. Accordingly, the plaintiff has failed to allege a substantive RICO violation, as required at step one of the RICO civil damages pleading requirements. Accordingly, his RICO claims should be dismissed.

## CONCLUSION

As a result of this Order and Report & Recommendation, the case shall proceed against the following defendants under the 2014 Case docket number: Metropolitan Transportation Authority ("MTA"), the New York City Transit Authority ("NYCTA"), the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), the Union, Brian Clark, Richard Davis, Ken Paige, Ed Pichardo, Dwayne Ruffin, Amerliz Ramirez, Sheila Gatling and Daniel Hogan.

**The Court RECOMMENDS that the District Court:**

1. Dismiss the 2015 Case without prejudice to pursuing such claims in the 2014 Case.

2. Dismiss all employment discrimination claims brought under Title VII against all individual defendants.

3. Dismiss all age discrimination claims brought under the ADEA, the NYSHRL, and the NYCHRL.

4. Dismiss all claims for failure to state claim or on immunity grounds against Defendants Robert Felman, Patrick Lyons, Joseph Micelotta, Evette Vargas, Jimmy Moats, Omar Bolano, Monique Baptise, Denise Washington, Hillary Tomlinson, Thomas Hill, Rodney Goddard, Chris Sohl, AK Jeffery, Howard Roberts, Carmen Bianca, SLD Lamaze, C Johnson, John Samuleson, Anita Miller, Reinaldo Rios, Denis Engel, Steven Farkas, Stephen Downs, Arthur Schwartz, Tracy Kiernan, Mitchell Paluszek, Craig Costa, Robert Grey, and Thomas Latimer.

5. Order the Plaintiff to show cause why his claims under the New York State and City Human Rights Law against all defendants should not be dismissed as barred pursuant to the statutory election-of-remedies provision. If the Plaintiff cannot demonstrate that his complaints filed with the Division of Human have been dismissed on the grounds of (1) administrative convenience; (2) untimeliness, or (3) annulment by the Plaintiff, the Court recommends dismissal of such claims for lack of jurisdiction.

6. Dismiss any construed defamation claims as time-barred.

7. Dismiss all RICO claims against all defendants.

8. Deny as moot and without prejudice the pending motion to dismiss at ECF Docket No. 40 of the 2014 Case in light of the consolidation of the 2014 and 2015 cases and the newly deemed final amended complaint

As set forth below, the parties shall have 14 days to file any objection to the Court's recommendation for dismissal of these claims and defendants.

**The Court ORDERS that:**

1. Service be effected upon Metropolitan Transportation Authority ("MTA"), the New York City Transit Authority ("NYCTA"), the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), Ameliz Ramirez, Sheila Gatling and Daniel Hogan.

   a. The Clerk of Court is directed to prepare the necessary paperwork to serve the summons and copies of ECF Nos. 51, 52, 56, and 58 of the 2014 Case (deemed the final amended complaint), and a copy of this Order.

   b. The defendants Metropolitan Transportation Authority ("MTA"), the New York City Transit Authority ("NYCTA"), the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), Sheila Gatling and Daniel Hogan shall be served at: 2 Broadway, 4th Floor, New York, NY 10004. The Court requests personal service to expedite the proceedings.

2.  The Court requests that Counsel for the Union Defendants accept service on behalf of Ameliz Ramirez to conserve judicial resources. Counsel shall notify the Court within five days of receipt of this order if they will do so.

3.  All defendants who are not recommended for dismissal shall file a letter within 30 days from this Order advising the Court how they intend to respond to the final amended complaint.

**The Court REQUESTS that the Clerk of Court terminate all pending motions in the**

**2014 Case**.

SO ORDERED.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
             June 14, 2016

cc:          Lavien Sales (*by Chambers*)
             PO Box 1179
             New York, NY 10027

\*       \*       \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

cc:    LaVien Sales (*By Chambers*)
       P.O. Box 1179
       New York, New York 10027