UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LAVIEN SALES,

                                                    Plaintiff,

                    -against-

TWU LOCAL 100 VICE PRESIDENT BRIAN
CLARK, et al.,

                                                    Defendants.

-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 2/3/2017
```

14-CV-8091 (PAC)(SN)

**AMENDED
REPORT AND
RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE PAUL A. CROTTY:

Plaintiff LaVien Sales is proceeding pro se and in forma pauperis. Sales brings claims alleging a breach of the duty of fair representation ("DFR") against Transport Workers Union ("TWU") Local 100 Vice President Brian Clark, as well as Richard Davis, Ken Paige, Ed Pichardo, and Dwayne Ruffin, individuals affiliated with Local 100 (collectively "Union Defendants"); and due process and fraud claims against the Metropolitan Transportation Authority ("MTA"), New York City Transit Authority ("NYCTA"), Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA"), and individual employees Amelia Ramirez, Sheila Gatling, and Daniel Hogan (collectively "MTA Defendants"). Sales's opposition papers also indicate that he continues to pursue federal and state discrimination claims against both groups of defendants, though an August 4, 2016 Order by the Honorable Paul A. Crotty deemed all such claims to have been withdrawn.

Before the Court are the defendants' motions to dismiss Sales's Final Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court

recommends that both the MTA and the Union Defendants' motions to dismiss be GRANTED without further leave to amend.

This Amended Report and Recommendation supersedes the Report and Recommendation issued on February 2, 2017, which contained an erroneous statement of law regarding the exclusivity of the New York Public Employment Relations Board's jurisdiction over New York state-law duty of fair representation claims. See ECF No. 123 at 10.

## BACKGROUND

### I.     Procedural Background

On October 7, 2014, Sales filed this action, alleging that officials of Local 100 of the Transport Workers Union (the "Union" or "TWU") discriminated against him. Using the Court's form complaint for employment discrimination, Sales asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107(1)(a) & (c) ("NYCHRL"). The Union Defendants moved to dismiss the complaint and, on November 30, 2015, the Honorable Paul A. Crotty adopted in full the Report and Recommendation of Magistrate Judge Michael H. Dolinger and dismissed the claims in the 2014 case with leave to amend. ECF No. 34. In that Order, Judge Crotty deemed a document filed by Sales entitled "Reply to 10-5-2015 Order & Complaint" to be Sales's amended complaint. Id.  The Union Defendants then moved to dismiss the amended complaint. ECF No. 40.

On November 4, 2015, Sales filed a case under docket number 15-CV-8689 (PAC)(SN) (the "2015 Case"). In that case, Sales named the MTA, NYCTA, and MABSTOA as defendants. Again using the Court's form complaint for employment discrimination, Sales indicated that he

brought his claims under Title VII, the NYSHRL and the NYCHRL. 2015 Case, ECF No. 2. By order dated December 14, 2015, the Court directed Sales to amend his complaint. 2015 Case, ECF No. 5. Sales failed to file an amended complaint, and consequently, none of the MTA Defendants in the 2015 case were served.

On June 14, 2016, the Court issued an Order and Report & Recommendation ("R&R"). ECF No. 61. The Court recommended that both cases be consolidated under the umbrella of this case, and that the 2015 case be dismissed without prejudice. The Court deemed four documents—ECF Nos. 51, 52, 56, and 58—to comprise the Final Amended Complaint ("FAC") and stated that Plaintiff may not further amend his complaint. The Court further recommended that Judge Crotty: dismiss all ADEA, NYSHRL, and NYCHRL claims; dismiss all Title VII claims against individual defendants; dismiss 29 individual defendants; dismiss any defamation claims as time-barred; dismiss the Plaintiff's RICO claims; and deny as moot the Union Defendants' above-mentioned motion to dismiss. ECF No. 40. In his objection to the R&R, Sales stated that he "respectfully withdraws his discrimination claims from the record . . . ." ECF No. 70. On August 4, 2016, Judge Crotty adopted the R&R in full. ECF No. 76. Judge Crotty also accepted Sales's withdrawal of his discrimination claims, and dismissed "all claims brought under Title VII, the ADEA, the NYSHRL, and the NYCHRL." Id.

Three distinct claims now remain. Against the Union Defendants, Sales has asserted a claim that the Union breached its duty of fair representation. He has brought a due process claim under 42 U.S.C. § 1983 and a state-law fraud claim against the MTA Defendants. And, notwithstanding Sales's withdrawal and Judge Crotty's dismissal of his federal and state discrimination claims against both groups of defendants, the Court will consider whether Sales has stated a claim against any defendant under Title VII, the NYSHRL, or the NYCHRL.

3

The Union Defendants moved to dismiss the FAC on August 3, 2016—the day before Judge Crotty's order adopting the R&R. ECF No. 71. On October 21, 2016, the MTA Defendants filed their motion to dismiss the FAC. ECF No. 103. After several extensions, Sales filed his response to the motions to dismiss on January 6, 2017. ECF Nos. 114–115. The MTA Defendants then filed a reply brief on January 17, 2017. ECF No. 118. On January 19, 2017, the Court requested supplemental briefing from the Union Defendants and Sales as to whether his DFR claims properly arose under federal or state law, and received such briefing from the Union Defendants on January 25, 2017. ECF No. 121.

## II.    Factual Background

Magistrate Judge Dolinger detailed the facts surrounding Plaintiff's claims against the Union Defendants in his R&R dated September 16, 2015. ECF No. 29, at 2–8. A portion of Judge Dolinger's summary is relevant here, both as to the Union Defendants and as to Sales's due process claims against the MTA Defendants:

> Plaintiff was brought up on charges by the MTA, and suspended, for incidents allegedly occurring on December 11 and 13, 2012. The first set of charges concerned both plaintiff's refusal on December 11, 2012 to relieve another bus driver because he had not finished his lunch and his related behavior at the time. The second set of charges concerned his conduct two days later, when he allegedly threatened Mr. Ruffin and engaged in what was perceived as menacing behavior towards Sheila Gatling, the General Superintendent at the depot, and his Surface Line Dispatcher Christopher [Sohl]. The employer sought his termination on both sets of charges and placed him on suspension on January 4, 2013, having charged him inter alia with refusing to report at the required time, behaving in a threatening manner to his General Superintendent, making a threatening gesture to Ruffin (the Union Depot Chairman) and repeatedly trying to enter a security booth after being ordered not to do so. He went through the grievance procedures, which led to the sustaining of the charges, and the Local then pursued arbitration on his behalf, which triggered an arbitral hearing on April 1 and 12, 2013.
>
> Sales was, in effect, represented by counsel for the Local at the hearing, and that attorney proffered a lengthy Position Statement on May 10, 2013, arguing that termination was an excessive sanction for each of the charges and seeking plaintiff's reinstatement with back pay.  The arbitrator issued two awards on July

4

8, 2013. In one he found that termination was not appropriate for the charges relating to plaintiff's behavior on December 11. In the other, he concluded that termination was proper for plaintiff's alleged threatening behavior towards Ruffin, Gatling and [Sohl] on December 13, 2012.

On December 12, 2013 plaintiff filed a charge of unlawful discrimination with the New York State Division of Human Rights ("SDHR"), naming the Local as respondent. . . . The SDHR dismissed the complaint . . . .

Id. at 5–7 (citations omitted). Although the documents that comprise Plaintiff's FAC are difficult to parse, Judge Dollinger's summary remains consistent with the allegations contained therein. To the extent that allegations in the FAC differ or are relevant to the Court's analysis, they are raised below.

In the FAC, Sales takes issue with several aspects of the disciplinary process against him. For example, he states that the Union Defendants submitted false affidavits in connection with disciplinary hearings (FAC, ECF No. 52 ¶¶ 122, 127–28); that he received "a substandard defense" during arbitration (id. ¶ 126); that there was "no evidence" that he "acted in a threatening manner towards Defendant Gatling" (id. ¶ 129); that the dismissal charge stemming from his Step I hearing was "predetermined" (id. ¶ 131); that the General Superintendent, Defendant Hogan, "did not view the video evidence" before conducting the Step I hearing or "establish his burden of proof" (id. ¶¶ 70–71); and that various parties engaged in "ex parte communication" before the first arbitration hearing (id. ¶¶ 100–02).

Sales has also asserted fraud claims against General Superintendent Sheila Gatling and Labor Relations Director Amelia Ramirez of the MTA. Indeed, he invokes "fraud" and calls various actions "fraudulent" at numerous points throughout his Final Amended Complaint. Sales alleges, among other things, that: Gatling filed a fraudulent disciplinary charge against him in September 2012 (id. ¶ 13); Ramirez and Gatling conspired to "defraud [Sales] out of a fair

5

hearing" in December 2012 (<u>id.</u> ¶ 24); and Ramirez wrote the "predetermined" charge on the disciplinary form handled by Hogan (<u>id.</u> ¶ 80).

## DISCUSSION

### I.    Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." <u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u>

The court may consider any written documents that are attached to a complaint, are incorporated by reference, or are "integral" to it. <u>Sira v. Morton</u>, 380 F.3d 57, 67 (2d Cir. 2004). This includes documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. <u>See</u> <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir.

2002); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). The court "may also look to public records . . . in deciding a motion to dismiss." <u>Taylor</u>, 313 F.3d at 776.

When faced with a pro se litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted); <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Chavis</u>, 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." <u>Id.</u>

## II.     Claims Against the Union Defendants

Generally, a union breaches its duty of fair representation if it represents a member in "a discriminatory, dishonest, arbitrary, or perfunctory fashion." <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 164 (1983).[1] The Union Defendants originally characterized the DFR claim as both a federal claim under Section 301 of the Labor Management Relations Act ("LMRA") and as a state-law claim, and sought dismissal on timeliness grounds. (<u>See</u> Defs.' Mem. Supp. Mot. Dismiss (ECF No. 74) at 9, 16 (citing both Section 301 and the state-law statute of limitations for DFR claims).) Upon further briefing, however, the Union Defendants argued that, because he was an employee of MABSTOA, a political subdivision of New York

---

[1] In his submissions opposing the Defendants' motions to dismiss, Sales asserts, for the first time, that the Union operated under a "conflict of interest" because he filed a complaint against the Union with the Public Employment Relations Board ("PERB") while it represented him during the grievance procedure. Any "conflict of interest" claim against a union must be brought as a DFR claim. <u>See</u>, <u>e.g.</u>, <u>Hague v. United Paperworks Int'l Union</u>, 949 F. Supp. 979, 987 (N.D.N.Y. 1996) (analyzing union's alleged conflict of interest in context of DFR claim).

State, Sales's DFR claims arise under state law only, and the Court should dismiss them for want of federal subject matter jurisdiction. ECF No. 121.

Section 301 of the LMRA provides non-public employees with the right to bring a claim for breach of a collective bargaining agreement. See Smith v. Evening News Ass'n, 371 U.S. 195, 200-201 (1962) (holding that an individual may sue under § 301 for breach of the collective bargaining agreement). A plaintiff can also bring federal claims against a union for breach of its duty to fairly execute a duty that "is implied under the scheme of" the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq.; DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983). And in a "hybrid" suit under the LMRA, a plaintiff can "bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." White v. White Rose Food, 128 F.3d 110, 113 (2d Cir. 1997) (citing DelCostello, 462 U.S. at 163–64).

But federal courts lack jurisdiction over DFR claims brought by public employees because those claims do not arise under federal law. "The LMRA does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." Baumgart v. Stony Brook Children's Serv., P.C., 249 F. App'x 851, 852 (2d Cir. 2007) (summary order); see also 29 U.S.C. § 152(2) (defining "employer" to exclude entities that are either a "State or political subdivision thereof"); id. § 152(3) (defining "employee" as only those who work for employers, i.e., not a state or its political subdivision); id. § 152(5) (defining "labor organization" as one in which "employees" participate for the purpose of dealing with "employers"). Therefore, for federal jurisdiction to extend to Sales's hybrid claim, he must show that (1) he worked for an "employer"—that is, an entity that is not a "political subdivision of the

State," and (2) he participated in a "labor organization" that deals with that employer. Baumgart, 249 F. App'x at 852.

"Political subdivisions" within the meaning of the LMRA are entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate. Ross v. Transp. Workers Union of Greater N.Y., AFL-CIO, No. 11-CV-9185 (SAS), 2013 WL 6506203, at *3 (S.D.N.Y. Dec. 11, 2013) (citation omitted). The MTA and the NYCTA have explicitly been held to be political subdivisions of the State of New York for the purpose of the LMRA. See Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 917 (2d Cir. 1987) (concluding that MTA was a political subdivision under ERISA statute); Ross, 2013 WL 6506203, at *5 (finding that MTA Bus, a subsidiary of MTA, was a political subdivision); Jackson v. N.Y. City Transit, No. 05-CV-1763 (FBLB), 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005) (finding NYCTA to be a political subdivision).

MABSTOA employees are in a slightly different position than their counterparts at the MTA and NYCTA because the statute creating the agency specifically provides that its officers and employees "shall not become, for any purpose, employees of the city or of the transit authority and shall not acquire civil service status." N.Y. Pub. Auth. Law § 1203–a (3)(b). Therefore, though MABSTOA is a public authority, its employees are not protected by New York State constitutional guarantees, and the New York Court of Appeals has found that, for the purposes of the New York Constitution, the work performed by MABSTOA employees falls "more within the conventional duties of employees of private companies than it is of employees of the State or one of its civil divisions." Collins v. Manhattan & Bronx Surface Transit Operating Auth., 62 N.Y.2d 361, 371–72 (1984). At the same time, MABSTOA employees are

9

included in the definition of "public employee" under the Public Employees' Fair Employment Act (popularly known as the "Taylor Law.") See N.Y. Civ. Serv. Law § 201(6)(a)(5) (including any "public authority, commission, or public benefit corporation" in definition of "public employer"); id. § 201(7)(a) (defining "public employee" as "any person holding a position by appointment or employment in the service of a public employer"). The Taylor Law's recognition of Sales as a public employee precludes him from filing a federal claim under the LMRA.

Therefore, lacking federal question jurisdiction, the Court may only hear Sales's state-law claim if it were to exercise supplemental jurisdiction under 28 U.S.C. § 1367. The Court need not reach this issue, however, because the claim is plainly time-barred.[2] New York state law DFR claims are governed by a four-month statute of limitations.

> Any action or proceeding against an employee organization . . . which complains that such employee organization has breached its duty of fair representation . . . shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later.

N.Y. CPLR § 217(2)(a).

As Magistrate Judge Dolinger noted in his R&R, the latest date on which Sales's DFR claim may have accrued was July 8, 2013, the date on which the arbitrator's award upholding his termination was issued. Sales therefore had until about November 7, 2013, to assert a state DFR claim. But he did not file a complaint against the Union Defendants until nearly a year later, on October 7, 2014. His DFR claim is therefore time-barred, and Sales does not provide any reason why the statute of limitations should be equitably tolled.[3]

---

[2] The Court expresses no opinion on the merits or timeliness of any claim Sales has apparently filed with the PERB. See ECF No. 114 at ¶¶ 120, 128.

[3] As the statute of limitations under federal law is six months, Sales's claim would be time-barred even if it were construed as arising under LMRA § 301.

Accordingly, the Court recommends that the DFR claim be dismissed.

## III.   Claims Against the MTA Defendants

In addition to his voluntarily dismissed discrimination claims, Sales has two remaining claims against the MTA Defendants: a due process claim under 42 U.S.C. § 1983, and a state-law fraud claim against Gatling and Ramirez.

### A.   Due Process

To determine whether a plaintiff was deprived of property without due process, the Court engages in a two-step analysis; it must first "identify the property interest involved," and then "must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005).

The MTA Defendants concede for the purposes of their motion to dismiss that Sales had a protectable property interest in his employment. See ECF No. 74 at 11 n.3. The Court therefore assumes without deciding that Sales does indeed have a property interest in his employment that is protected by the due process clause. But see Vargas v. Manhattan & Bronx Surface Transit Operating Auth., No. 08-CV-9254 (AKH), 2010 WL 1783555, at *7–8 (S.D.N.Y. Apr. 30, 2010) (finding that MABSTOA employees did not have protectable property interest because they did not have full civil service status).

The "question remains what process is due." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The "right to some kind of prior hearing is paramount." Bd. of Regents v. Roth, 470 U.S. 532, 569–70 (1972). Sales cannot establish that the MTA Defendants violated his due process rights because he received adequate pre-deprivation process. Indeed, the MTA Defendants provided "the essential requirements of due process . . . notice and an opportunity to respond." Loudermill, 470 U.S. at 546. In this case, Sales received notice of the charges against

11

him on December 18, 2012, with an opportunity to respond at a Step I hearing. After the charges

were sustained on January 4, 2013, and he was placed on pre-disciplinary suspension, Sales had

the opportunity to appeal this determination to an impartial arbitrator, who heard his appeal in

April 2013. At the two arbitration hearings, Sales was represented by Union counsel. On July 8,

2013, the arbitrator issued a detailed, written decision explaining the reasons for upholding

Sales's dismissal. In sum, Sales received notice of the disciplinary charges against him,

proceeded through various levels of the disciplinary grievance process in accordance with his

collective bargaining agreement, and, through the Union, which was represented by counsel,

presented his claims at two binding arbitration hearings. Courts in this District have found that

these procedures satisfy due process. See Vargas, 2010 WL 1783555, at *8 (MABSTOA

employee who "received all of the procedural protections provided for in the Collective

Bargaining Agreement" was not deprived of due process). Because Sales makes no plausible

allegation that he was denied notice and an opportunity to be heard, or that he did not "receive[]

all of the procedural protections provided for" in his collective bargaining agreement, the Court

recommends that his due process claim be dismissed.

### B.      Fraud

Sales also asserts state-law fraud claims against Sheila Gatling and Amelia Ramirez, two

of the individual MTA Defendants. Though the exact nature of the claims is not clear, they are

plainly time-barred under New York law.

Under state law, "an action against the [transit] authority founded on tort shall not be

commenced more than one year and ninety days after the happening of the event upon which the

claim is based . . . ." N.Y. Pub. Auth. Law § 1212(2); see also Schlesinger v. N.Y. City Transit

Auth., No. 00-CV-4759 (SAS), 2001 WL 62868, at *11 (S.D.N.Y. Jan. 24, 2001) (section 1212

limited to tort actions). This statute applies to both actions against the Authority and its employees or officers. See, e.g., Brown v. Metropolitan Transit Auth., 717 F. Supp. 257, 259 (S.D.N.Y. 1989) ("According to New York law, a notice of claim, pursuant to § 50-e is a mandatory condition precedent to the bringing of a tort claim against a public corporation, or any of its officers, appointees, or employees."); Laverpool v. N.Y. City Transit Auth., 835 F. Supp. 1440, 1449 (E.D.N.Y. 1993) (applying requirements of § 1212 to both Authority and individual employee). Sales's fraud claim is a tort. See, e.g., D'Antonio v. Metropolitan Transit Auth., No. 06-CV-4286 (KMW), 2008 WL 582354, at *6 (S.D.N.Y. Mar. 4, 2008) (fraud claim against MTA and NYCTA was "founded on tort" and subject to requirements of Pub. Auth. Law § 1212).

The last meaningful contact that Sales apparently had with any of the MTA Defendants was July 8, 2013—the date that the arbitrator issued his awards—and, in fact, Sales provides January 4, 2013, as the latest date in connection with any of his fraud allegations against Gatling and Ramirez. See FAC, ECF No. 52 at 14–16. Sales filed his complaint against the MTA Defendants on November 4, 2015, and did not assert claims against Gatling or Ramirez until March 4, 2016. Even the most generous possible set of dates—an accrual date of July 8, 2013, and a filing date of November 4, 2015—places Sales well outside of the one year and 90 day statute of limitations. His fraud claim against these defendants is therefore time-barred and should be dismissed.

Sales also failed to comply with § 1212(2)'s notice-of-claim requirement. "Under New York law, a notice of claim is a condition precedent to bringing [tort] actions against municipal corporations," and "[f]ailure to comply with these requirements ordinarily requires a dismissal for a failure to state a cause of action." Hardy v. N.Y. City Health & Hosp. Corp., 164 F.3d 789, 793–94 (2d Cir. 1999). The statute requires as a prerequisite to filing an action against the

authority that "a notice of claim shall have been served on the authority within the time limited, and in compliance with all the requirements of section fifty-e of the general municipal law." N.Y. Pub. Auth. Law § 1212(2). That statute, in turn, provides that a notice of claim must be served "within ninety days after the claim arises," and "shall set forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable. . . ." N.Y. Gen. Mun. Law § 50-e(1), (2).

Sales has not asserted or provided any evidence that he has filed a notice of claim regarding his fraud claims, much less that he did so in a timely manner. Accordingly, because Sales has failed to comply with the limitations period and notice-of-claim requirement contained in N.Y. Pub. Auth. Law § 1212, the Court recommends that his state-law fraud claims be dismissed against the MTA Defendants.

Alternatively, the Court may simply decline to exercise supplemental jurisdiction over this claim. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because Sales cannot assert a federal claim against any defendant in this case—see due process claim, discussed above, and Title VII claim, discussed below—the Court should decline to exercise supplemental jurisdiction over any state-law claim. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state-law claims where no federal claims remained).

IV.     **Title VII, NYSHRL, and NYCHRL Claims**

As referenced above, Sales was deemed to have withdrawn his Title VII, NYSHRL, and NYCHRL claims on July 21, 2016. In his objections to the June 14, 2016 Report and Recommendation, he stated: "Plaintiff respectfully withdraws his discrimination claims from the record and is dealing with the face of the record, which is Due Process and Fraud violations." ECF No. 70. Accordingly, Judge Crotty dismissed those claims on August 4, 2016. ECF No. 76. Nevertheless, Sales's opposition to the Defendants' motion to dismiss is replete with references to discrimination and Title VII of the Civil Rights Act of 1964. See, e.g., ECF No. 114 at 24–26. As such, according Sales the special solicitude that pro se plaintiffs are due, the Court shall consider his discrimination claims notwithstanding their earlier dismissal. The Court finds, however, that there is an independent basis for dismissing each of these claims.

As noted in my June 14, 2016 Report and Recommendation, Sales's claims under the NYSHRL and NYCHRL are barred by these laws' election-of-remedies provisions. New York Executive Law § 297(9) provides that any person who claims "to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . and such other remedies as may be appropriate . . . *unless such person had filed a complaint hereunder or with any local commission on human rights*. . . ." N.Y. Exec. L. § 297(9) (emphasis added); see also N.Y.C. Admin. Code § 8-502(a) (allowing for civil actions to be brought "unless such person has filed a complaint with the City Commission on Human Rights or with the State Division of Human Rights with respect to such alleged unlawful discriminatory practice"). The Court of Appeals for the Second Circuit has consistently held that "the remedies of administrative review through the Human Rights Division or judicial review are mutually exclusive." Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 882 (2d Cir. 1995) (citing Pan Am. World Airways v. N.Y. State

Human Rights Appeal Bd., 61 N.Y.2d 542, 548 (1984)). Essentially, once a plaintiff has brought a complaint before the New York State Department of Human Rights ("NYSDHR"), "that becomes the sole avenue of relief, and subsequent judicial action on the same complaint" is barred. Id. at 884 (quoting Magini v. Otnorp, Ltd., 180 A.D. 2d 476, 477 (1st Dep't 1992) (internal quotations omitted)); see also York v. Ass'n of the Bar of the City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002) (holding that claims brought in front of the NYSDHR "may not be brought again as a plenary action in another court"). The only exceptions to this general rule are provided in Executive Law § 297(9), that states "where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division." N.Y. Exec. L. § 297(9).

There is evidence on the record that Sales has elected to pursue his state and city discrimination claims before the NYSDHR. In the 2015 case, Plaintiff attached to his complaint a Verified Complaint filed with the NYSDHR, naming MTA New York City Transit and the Manhattan and Bronx Surface Transportation Operating Authority. See 2015 Case, ECF No. 2. Moreover, the Union Defendants have attached a Determination and Order after Investigation from the NYSDHR (dismissing Sales's claims) that shows that Sales chose to pursue his retaliation claims against TWU Local 100 in that forum as well.[4] ECF No. 41-6. Thus, Sales has made his election to pursue both his city and state claims at the Human Rights Division as to both the MTA and Union Defendants, and he is barred from bringing them in federal court as a plenary action.[5]

---

[4] As it was produced by a public agency in an administrative proceeding, the Court may take judicial notice of this document on a Rule 12(b)(6) motion without converting it into a motion for summary judgment under Federal Rule of Civil Procedure 56. See, e.g., Rosario v. Sterling Entm't, LLC, No. 08-CV-4369, 2009 WL 1683351, at *2 (S.D.N.Y. June 16, 2009).

[5] While the NYSDHR decision references only TWU Local 100 and not the individual Union defendants and the Verified Complaint does not mention the individual MTA defendants Amelia Ramirez, Sheila

Therefore, the Court is left to consider whether Sales has a viable Title VII claim. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). This antidiscrimination provision prohibits employers (or labor organizations) from mistreating an individual because of the individual's protected characteristics, Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007), or retaliating against an employee who has opposed any practice made unlawful by those statutes, see Crawford v. Metro. Gov't, 555 U.S. 271, 276 (2009) (holding that conduct is protected when it "confront[s]," "resist[s]," or "withstand[s]" unlawful actions). Mistreatment at work that occurs for a reason other than an employee's protected characteristic or opposition to unlawful conduct is not actionable under these federal antidiscrimination statutes. See Chukwuka v. City of New York, 513 F. App'x 34, 36 (2d Cir. 2013) (summary order) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).[6]

---

Gatling, and Daniel Hogan, "aiding and abetting" claims against individuals under the NYSHRL and NYCHRL are predicated on the liability of the Union/employer themselves. See Ren Yuan Deng v. N.Y. State Office of Mental Health, No. 13-CV-6801 ALC, 2015 WL 221046, at *5 (S.D.N.Y. Jan. 15, 2015) ("[A] predicate for aider and abettor liability under this provision is employer liability."); DeWitt v. Lieberman, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) ("[L]iability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor."). Accordingly, as the election-of-remedies provision bars Sales from pursuing his NYSHRL and NYCHRL claims against the Union and his former employer in this forum, his claims against the individual defendants associated with them are similarly barred.

[6] Individual supervisors cannot be held liable under Title VII. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); see also Darcy v. Lippman, 356 F. App'x 434, 436-37 (2d Cir. 2009) (summary order) (Title VII does not provide for actions against individual supervisors).

17

At the pleading stage in an employment discrimination action, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. at 87.

To the extent that Sales has not withdrawn his Title VII claims, he cannot state a claim under Title VII against either set of Defendants. Although Sales's submissions to the Court are replete with allegations that his employer and his union discriminated against him on the basis of his race, he offers nothing, in any of the documents he has submitted to the Court, beyond merely conclusory statements. See, e.g., FAC, ECF No. 52, ¶ 22 ("I was wrongfully taken out of service by SLD Chris Sohl because I complained of his abuse. Chris Sohl position at Mabstoa/NCTA is a Surface Line Dispatcher and race is white male. My race is a black male."); id. ¶ 24 ("When Labor Relations Director Amelia Ramirez found out I first complained against a white employee Chris Sohl knowing that I am black employee she covered the situation up to avoid employer discrimination."); id. ¶ 103 ("I am a black man, which apart [sic] of a protected class of people. Craig Costa is a Spanish male, the security guard, and Arbitrator are white males. Defendant Craig Costa created a hostile and racial environment in which, it lead the arbitrator to believe I was guilty before the hearing process even started and it effected his over all [sic] opinion."); id. ¶ 116 ("What so disturbing to me Defendant Arbitrator Robert Grey tell Steven Farkas to tell me contacting him by any and all means was inappropriate. To me that is a racist statement in regards my rights, as a human being does not matter as a black man of a protected class of people.").

As to the Union Defendants, it is unlawful under Title VII for a labor union "to exclude or to expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1). As Judge Dolinger pointed out in his September 16, 2015 Report and Recommendation, a plaintiff asserting a Title VII claim against a union must prove the elements of denial of fair representation as well as the elements of a claim of discrimination. See, e.g., Tappin v. Metro. Suburban Bus Auth., No. 12-CV-2016 (JS), 2014 WL 1330649, at *4 (E.D.N.Y. Mar. 31, 2014); Klaper v. Cypress Hills Cemetery, No. 10-CV-1811 (NGG), 2012 WL 959403, at *7-8 (E.D.N.Y. Mar. 21, 2012). To state a Title VII claim against a union, then, a plaintiff must plead and prove (1) that the employer "committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the union's actions were motivated by discriminatory animus." Vaughn v. Am. Tel. & Tel. Co., 92 F. App'x 21, 23 (2d Cir. 2004) (summary order). In other words, "all that is required to state a Title VII claim against a union is a breach of the duty of fair representation because of race, color, religion, sex, or national origin." Agosto v. Corr. Officers Benevolent Ass'n, 107 F. Supp. 2d 294, 305 (S.D.N.Y. 2000).

The Court has already determined that Sales cannot bring a standalone DFR claim against the Union, largely on procedural grounds. Separate from that discussion, it is clear that Sales does not present any facts to support the substantive claim that the Union breached its duty of fair representation. Indeed, the record shows that the Union vigorously defended Sales's interests throughout the grievance process, and there is no indication that any actions taken by the Union were "motivated by discriminatory animus." Sales alleges no facts, beyond his conclusory allegations, that discrimination played any role whatsoever in the Union's representation of him.

Nothing in the record hints at any plausible inference that the Union discriminated against Sales, and Sales therefore cannot sustain a Title VII claim against the Union.

Sales also cannot state a claim under Title VII against his former employer. Although the MTA Defendants obviously "took adverse employment action against him" by firing him, Sales cannot demonstrate that his race "was a motivating factor in the employment decision." Vega, 801 F.3d at 86. Again, other than Sales's conclusory allegations of discrimination, there are no facts plead from which to infer that any adverse employment action occurred *because of* Sales's race. Accordingly, even if Sales's Title VII claims are not deemed to have been withdrawn, the Court recommends that they be dismissed for failure to state a claim.

## V.     First Amendment Claims

In his Memorandum of Law in Support of Plaintiff's Opposition Motion, Sales appears to raise First Amendment claims for the first time. ECF No. 115 at 17–19. The Court may not consider these claims as they have been improperly raised for the first time in an opposition to a motion to dismiss, and therefore recommends that Sales's First Amendment claims be dismissed.

## VI.    Leave to Amend

"Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." Terry v. Inc. Village of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). In this case, Sales has already had one opportunity to amend his complaint after his initial complaint was dismissed by Judge Crotty on November 30, 2015. Though Sales did not file a cohesive amended complaint, the Court deferred to his pro se status, and liberally construed four documents to constitute such a complaint. As demonstrated above, all of Sales's claims are waived, time-barred, improperly raised, meritless, or do not provide an independent basis for federal subject-matter jurisdiction.

Accordingly, because any further amendment to the Final Amended Complaint would be futile, the Court recommends that leave to amend be denied.

## CONCLUSION

For these reasons, the Court recommends that the MTA and Union Defendants' motions to dismiss be GRANTED without leave to amend.

_____
SARAH NETBURN
United States Magistrate Judge


DATED:        New York, New York
              February 3, 2017


cc:           Lavien Sales (*by Chambers*)
              PO Box 1179
              New York, NY 10027




                    *              *              *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable Paul A. Crotty at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).